UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DONALD G. DRAPKIN,

        *Plaintiff,*

    -against-

MAFCO CONSOLIDATED GROUP INC.,

        *Defendant.*

JUDGE GARDEPHE

**COMPLAINT
AND JURY DEMAND**

09 Civ.

**09 CIV 1285**

RECEIVED
FEB 1 3 2009
U.S.D.C. S.D.N.Y.
CASHIERS

      Plaintiff Donald G. Drapkin, by his undersigned attorneys, for his Complaint, alleges as follows:

## NATURE OF THE ACTION

    1.    This is a blatant case of breach of contract, made more egregious still by the fact that defendant Mafco Consolidated Group Inc. ("Mafco") has breached its contract with a man – plaintiff Donald G. Drapkin – who spent 20 years working for Mafco's affiliate MacAndrews & Forbes Inc. ("MacAndrews & Forbes"), serving as its Vice Chairman, and who was recognized by MacAndrews & Forbes's owner and Chairman, Ronald O. Perelman, as a "dynamic force in the development and leadership of our firm," and "a close friend" who "has done a terrific job with us."  Despite such warm words, defendant Mafco has failed to pay Mr. Drapkin in excess of $2.5 million due to him in connection with his departure from MacAndrews & Forbes.

## JURISDICTION AND VENUE

    2.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1).  The amount in controversy exceeds $75,000, exclusive of costs and interest.

    3.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(a)(1), in that

the defendant resides in this district, and pursuant to 28 U.S.C. § 1391(a)(2), in that a substantial part of the events giving rise to the claim occurred in this district.

## THE PARTIES

4.      Plaintiff Donald G. Drapkin is a natural person and citizen of the State of New Jersey.

5.      Upon information and belief, defendant Mafco Consolidated Group Inc. ("Mafco") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in New York, New York.

## FACTS

### Mr. Drapkin's History with MacAndews & Forbes

6.      Mr. Drapkin has played a leading role in the field of mergers and acquisitions for over 30 years.  In 1987, Mr. Drapkin left his position as a partner in the law firm of Skadden, Arps, Meagher & Flom to work with Ronald O. Perelman at MacAndrews & Forbes.

7.      Upon information and belief, MacAndrews & Forbes is wholly owned by its Chairman and Chief Executive Officer, Mr. Perelman.  It is a holding company with interests in a diversified portfolio of public and private companies.  MacAndrews & Forbes invests in companies with strong market positions, recognized brands and growth potential.  Current holdings include leading participants across a wide range of industries, from cosmetics and entertainment to biotechnology and military equipment.

8.      For 20 years, from 1987 until his departure in 2007, Mr. Drapkin worked for MacAndrews & Forbes, serving as its Vice Chairman.

9.      On or about May 1, 2007, Mr. Drapkin left MacAndrews & Forbes, and

thereafter joined the investment banking firm Lazard Ltd., where Mr. Drapkin now serves as Vice Chairman of Lazard International and as Chairman of Lazard's Investment Committee.

10.     At the time of Mr. Drapkin's departure from MacAndrews & Forbes, its chairman, Mr. Perelman said publicly that "Don was a dynamic force in the development and leadership of our firm. . . . He is not only a close friend, but a wise counsel to me and our team[.] He has done a terrific job for us and we will miss him."

### The Relevant Contract

11.     On or about April 25, 2007, in connection with Mr. Drapkin's expected departure from MacAndrews & Forbes, Mr. Drapkin and defendant Mafco simultaneously entered into a certain stock purchase agreement dated April 25, 2007 (the "SPA").

12.     Pursuant to the SPA defendant Mafco agreed to buy from Mr. Drapkin 200,000 shares of the common stock of M&F Worldwide Corp., for an aggregate consideration of $12 million.  A copy of the SPA is attached hereto as Exhibit A.

### Defendant's Breach of the SPA

13.     Mr. Drapkin has fulfilled all of his obligations under the SPA, including, without limitation, delivering the 200,000 shares of M&F Worldwide Corp. stock (the "Shares") to defendant Mafco.

14.     As it was required to do under the SPA, defendant Mafco paid Mr. Drapkin $5 million upon delivery of the Shares.  Mafco was also obligated under the SPA to pay Mr. Drapkin an additional $7 million according the following schedule:  $2.25 million plus interest on January 1, 2008; $2.25 million plus interest on July 1, 2008; and $2.5 million plus interest on January 1, 2009.  See Exhibit A at ¶ 3.

15.     Mafco made the payments due to Mr. Drapkin on January 1, 2008 and

3

July 1, 2008.

16.     Mafco has failed and refused to pay to Mr. Drapkin the $2.5 million plus interest that was due to him on January 1, 2009.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract By Defendant Mafco)

17.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 16 as if fully set forth herein.

18.     The SPA is a binding, valid, and enforceable contract between Mr. Drapkin and Mafco.

19.     Mr. Drapkin has complied with and fully performed under the SPA.

20.     In breach of the SPA, Mafco has failed and refused to pay to Mr. Drapkin the payment of $2.5 million, plus interest, due to him on January 1, 2009.

21.     Mr. Drapkin has been damaged, in an amount in excess of $2.5 million, by Mafco's failure to make the payment due to him under the SPA.

WHEREFORE, it is respectfully requested that judgment be entered for plaintiff, awarding plaintiff money damages against defendant Mafco in an amount to be proven at trial, currently in excess of $2,500,000, together with pre-judgment interest, post-judgment interest, attorneys' fees and costs, and awarding such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable in this action.

Dated: New York, New York
February 13, 2009

MORVILLO, ABRAMOWITZ, GRAND
IASON, ANELLO & BOHRER, P.C.

By: _____
Elkan Abramowitz (EA-3987)
Thomas M. Keane (TK-6320)
565 Fifth Avenue
New York, New York 10017
(212) 856-9600

HOGAN & HARTSON

By: _____
David Dunn (DD-1823)
875 Third Avenue
New York, New York 10022
(212) 918-3000

*Attorneys for Plaintiff*

# EXHIBIT A

# STOCK PURCHASE AGREEMENT

**THIS STOCK PURCHASE AGREEMENT** (this "Agreement") is made and entered into as of April 25, 2007, by and between Donald G. Drapkin ("Seller") and Mafco Consolidated Group Inc. ("Buyer").

**WHEREAS**, Seller desires to sell to Buyer, and Buyer desires to purchase from Seller, 200,000 shares of common stock, par value $.01 per share (the "Shares"), of M&F Worldwide Corp., a Delaware corporation (the "Corporation"), for the amount set forth below and subject to the terms, conditions, promises, representations and warranties set forth herein; and

**WHEREAS**, the parties hereto desire to set forth herein the terms and conditions of their agreements and understandings.

**NOW, THEREFORE**, in consideration of the foregoing, of the mutual promises herein contained and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound, hereby covenant and agree as follows:

    1.    <u>Sale and Transfer of the Shares</u>.  Seller hereby sells, assigns, transfers, conveys and delivers the Shares to Buyer.

    2.    <u>Instruments of Conveyance and Transfer</u>.  Simultaneously with the execution hereof, Seller is delivering to Buyer either (x) a stock certificate endorsed in blank or (y) a duly executed assignment separate from such certificate, in either case evidencing the transfer of the Shares, dated the date hereof, and in such form satisfactory to Buyer as shall be effective to vest in Buyer good and valid title to the Shares, free and clear of any option, call, contract, commitment, demand, lien, charge, security interest or encumbrance whatsoever.  Seller shall at any time, and from time to time, after the date hereof, execute, acknowledge and deliver all further assignments, transfers, and any other such instruments of conveyance, upon the request of Buyer, to confirm the sale of the Shares hereunder.

    3.    <u>Payment by Buyer</u>.  Buyer is purchasing the Shares for an aggregate consideration of $12,000,000, comprised as follows:

        (a)    $5,000,000, by check or wire transfer of immediately available funds, upon delivery of the Shares; and

        (b)    $7,000,000 (the "Deferred Payment"), by check or wire transfer of immediately available funds, as follows:

        i    $2,250,000 on January 1, 2008, plus all interest accrued and unpaid on the full amount of the Deferred Payment ($7,000,000) through such date;

        ii    $2,250,000 on July 1, 2008, plus all interest accrued and unpaid on the remaining amount of the Deferred Payment ($4,750,000) through such date; and

iii    $2,500,000 on January 1, 2009, plus all interest accrued and unpaid on the remaining amount of the Deferred Payment ($2,500,000) through such date.

For purposes of this Section 3(b), interest shall accrue from the date hereof on the aggregate unpaid principal amount outstanding hereunder at a rate per annum equal to the lowest rate necessary to meet the Internal Revenue Code requirements for the "applicable federal rate." Interest shall be determined on the basis of a 365-day year, and on the basis of the actual number of days elapsed (including the first day but excluding the last day). In no case shall the interest on this note exceed the maximum amount that the Payee may charge or collect under applicable law.

4.    Representations, Warranties and Acknowledgments.  Seller represents and warrants that:

(a)    Seller has the full, absolute and entire power and legal right to execute, deliver and perform this Agreement.

(b)    The Shares are owned of record and beneficially by Seller, free and clear of any option, call, contract, commitment, demand, lien, charge, security interest or encumbrance whatsoever.

(c)    Seller hereby acknowledges that (i) Buyer and its affiliates may be in possession of material, nonpublic information regarding the Corporation, its financial condition, results of operations, business, properties, assets, liabilities, management, projections, appraisals, and plans, proposals and prospects; and (ii) if Seller were in possession of some or all of such information Seller might not be willing to sell any or all of the Shares pursuant to this Agreement.

(d)    Seller also acknowledges and agrees that Buyer shall have no obligation to disclose to Seller any of the information referred to in the preceding sentence. Seller further acknowledges that Seller has conducted its own investigation, to the extent that Seller has determined necessary or desirable, regarding the information described in the first sentence of this paragraph.

5.    Representations, Warranties and Acknowledgments.  Buyer represents and warrants that:

(a)    Buyer has not relied upon any representations or other information (whether oral or written) with respect to the Corporation or the Shares other than as set forth in this Agreement.

(b)    Buyer, by reason of the business and financial experience of its management, has the capacity to protect its own interests in connection with the transactions

- 2 -

contemplated by this Agreement. Buyer further represents that it is able to bear the economic risk of an investment in the Shares.

(c)     Buyer is an "accredited investor" as that term is defined in Regulation D promulgated under the Securities Act of 1933.

6.     Any material breach of the Separation Agreement, dated as of April 24, 2007, by and between Seller and MacAndrews & Forbes Inc. or the Amended Promissory Note, dated as of April 24, 2007, entered into by the Seller in connection with the Separation Agreement, may be considered a breach of this Agreement.

7.     Governing Law. This Agreement shall be construed in accordance with the laws of the State of New York (without regard to its laws relating to conflicts-of-laws).

8.     Invalidity or Unenforceability. In case any one or more of the provisions contained in this Agreement shall, for any reason, be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect the other provisions of this Agreement, and this Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein.

9.     Benefits and Burdens. This Agreement is binding upon, and inures to the benefit of, the parties hereto and their respective estates, executors, administrators, legatees, heirs, and personal and legal representatives, successors and permitted assigns.

10.    Change; Waiver. No change or modification of this Agreement shall be valid unless the same is in writing and signed by the parties hereto. No waiver of any provision of this Agreement shall be valid unless in writing and signed by the party waiving its rights. The failure of either party at any time to insist upon, or any delay by either party at any time to insist upon, strict performance of any condition, promise, agreement or understanding set forth herein shall not be construed as a waiver or relinquishment of the right to insist upon strict performance of the same condition, promise, agreement or understanding at a future time.

11.    Headings. The headings and other captions in this Agreement are for convenience and reference only and shall not be used in interpreting, construing or enforcing any of the provisions of this Agreement.

12.    Counterparts. This Agreement may be executed in any number of counterparts, which may be by facsimile, all of which counterparts taken together shall constitute one and the same instrument.

- 3 -

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

MAFCO CONSOLIDATED GROUP INC.

_____
Howard Gittis, Vice Chairman

SELLER

_____
Donald G. Drapkin

- 4 -