UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DONALD G. DRAPKIN,

       *Plaintiff and Counterclaim Defendant,*

    -against-

MAFCO CONSOLIDATED GROUP INC.,

       *Defendant and Counterclaim Plaintiff.*

09 Civ. 1285 (PGG)

ECF Case

**PLAINTIFF AND COUNTERCLAIM DEFENDANT DONALD G. DRAPKIN'S
REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HIS
<u>MOTION FOR SUMMARY JUDGMENT</u>**

Elkan Abramowitz
Thomas M. Keane
Sidhardha Kamaraju
Gretchan Ohlig
Morvillo, Abramowitz, Grand, Iason,
  Anello & Bohrer, P.C.
565 Fifth Avenue, New York, NY 10017
(212) 856-9600

David Dunn
Christine Wagner
Hogan Lovells US LLP
875 Third Avenue, New York, NY 10022
(212) 918-3000

*Attorneys for Donald G. Drapkin*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................1

ARGUMENT.....................................................................................................1

I.      The Company Agreed to Continue to Provide Drapkin with Medical Coverage ..............1

II.     Drapkin Did Not Retain Documents in Violation of the Separation Agreement...............2

        A.      The Company Never Requested that Drapkin Return Documents ........................2

        B.      There Is No Basis for an Adverse Inference ........................................................4

                1.      Drapkin Had No Obligation to Preserve the Backup Device .....................5

                2.      The Company Was Not Prejudiced By the Loss of the Backup Device .....7

        C.      The Documents Were õOtherwise Availableö to the Company ...........................8

III.    Drapkin Did Not Breach Section 5 of the Separation Agreement ..................................10

        A.      The Company Cannot Read the Notice and Cure Provision Out of Section 5......11

        B.      The Companyøs Construction of the Term õPublic Domainö Must Be Rejected..12

        C.      The Companyøs New Claimed Incidents Are Not Disparagement......................14

IV.     Drapkin Did Not Attempt to Induce Rose to Leave the Company ..................................16

CONCLUSION.................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

*Alfieri v. Guild Times Pension Plan,*
446 F. Supp. 2d 99 (E.D.N.Y. 2006) .................................................................6

*Bobo v. Wachovia Secs., LLC,*
No. 107 Civ. 010506, 2010 WL 1186455 (N.D.N.Y. Mar. 23, 2010) ....................5

*Citibank, N.A. v. 666 Fifth Ave. Ltd. P'ship,*
2 A.D.3d 331, 769 N.Y.S.2d 268 (1st Dep't 2003) ...........................................18

*Crawford-El v. Britton,*
523 U.S. 574 (2000) .........................................................................................7

*Evans v. Famous Music Corp.,*
1 N.Y.3d 452, 775 N.Y.S. 2d 757, 807 N.E.2d 869 (2004) ...............................18

*Federal Ins. Co. v. Americas Ins. Co.,*
258 A.D.2d 39, 691 N.Y.S.2d 508 (1st Dep't 1999) .........................................18

*Fujitsu Ltd. v. Federal Express Corp.,*
247 F.3d 423 (2d Cir. 2001) .............................................................................5

*In re Grand Jury Subpoena Duces Tecum Dated May 29, 1987,*
834 F.2d 1128 (2d Cir. 1987) ...........................................................................6

*Gutierrez-Bonilla v. Target Corp.,*
No. 08 Civ. 3985, 2009 WL 5062116 (E.D.N.Y. Dec. 16, 2009) ........................4

*Houlihan v. Marriott Int'l, Inc.,*
No. 00 Civ. 7439, 2003 WL 22271206 (S.D.N.Y. Sept. 30, 2003) ......................8

*International Gateway Exch. LLC v. Western Union Fin. Servs.,*
333 F. Supp. 2d 131 (S.D.N.Y. 2004) ..............................................................10

*Kerin v. United States Postal Serv.,*
116 F.3d 988 (2d Cir. 1997) .............................................................................9

*Klos v. Lotnicze,*
133 F.3d 164 (2d Cir. 1997) ............................................................................13

*Kraus v. General Motors Corp.,*
No. 03 Civ. 4467, 2007 WL 3146911 (S.D.N.Y. Oct. 24, 2007) ........................5

*LaSalle Bank Nat'l Ass'n v. Nomura Capital Corp.*,
   424 F.3d 195 (2d Cir. 2005) ....................................................................................2

*Legal Aid Soc'y v. City of New York*,
   114 F. Supp. 2d 204 (S.D.N.Y. 2000) ....................................................................11

*Liburd v. Bronx Lebanon Hosp. Ctr.*,
   No. 07 Civ. 11316, 2009 WL 900739 (S.D.N.Y. Apr. 3, 2009) ...............................4

*In re Lipper Holdings, LLC*,
   1 A.D. 3d 170, 766 N.Y.S.2d 561 (1st Dep't 2003) ...............................................15

*Luna v. American Airlines*,
   676 F. Supp. 2d 192 (S.D.N.Y. 2009) ..........................................................4, 7, 8

*Maharishi Hardy Blechman Ltd. v. Abercrombie & Fitch Co.*,
   292 F. Supp. 2d 535 (S.D.N.Y. 2003) ....................................................................17

*Mapinfo Corp. v. Spatial Re-Engineering Consultants*,
   No. 02 Civ. 1008, 2006 WL 2811816 (N.D.N.Y. Sept. 28, 2006) .........................15

*Maxim Group LLC v. Life Partners Holdings, Inc.*,
   690 F. Supp. 2d 293 (S.D.N.Y. 2010) ....................................................................16

*Meiri v. Dacon*,
   759 F.2d 989 (2d Cir. 1985) ...................................................................................14

*Point Prod. A.G. v. Sony Music Entm't, Inc.*,
   No. 93 Civ. 4001, 2000 WL 1006236 (S.D.N.Y. July 20, 2000) ....................11, 12

*Port Auth. Police Asian Jade Soc. v. Port Auth.*,
   601 F. Supp. 2d 566 (S.D.N.Y. 2009) ......................................................................8

*Prowley v. Hemar Ins. Corp. of Am.*,
   No. 05 Civ. 981, 2010 WL 1848222 (S.D.N.Y. May 7, 2010) ...............................14

*Rivera v. Nat'l Passenger R.R. Serv.*,
   442 F. Supp. 2d 164 (S.D.N.Y. 2006) ......................................................................5

*Schulman v. Continental Ins.*,
   258 A.D. 2d 639, 685 N.Y.S.2d 794 (2d Dep't 1999) ...........................................14

*Seiden Assocs., Inc. v. ANC Holdings, Inc.*,
   959 F.2d 425 (2d Cir. 1992) ...............................................................................13-14

*Shaw Group Inc. v. Triplefine Int'l Corp.*,
   322 F.3d 115 (2d Cir. 2003) ...................................................................................13

*Smith v. City of New York*,
    388 F. Supp. 2d 179 (S.D.N.Y. 2005) ....................................................................6

*Wechsler v. Hunt Health Sys.*,
    186 F. Supp. 2d 402 (S.D.N.Y. 2002) ..................................................................17

## PRELIMINARY STATEMENT

The Company's opposition to this motion makes clear what had become increasingly obvious during the course of this litigation. The Company decided not to pay Drapkin what it owes him and then manufactured excuses after he sued. The excuses the Company offers all ignore the contractual language, disregard the absence of evidence, or both. In essence, the Company says let's pretend that the Separation Agreement does not use the terms "otherwise available" and "public domain." Let's pretend that Steven Fasman asked Drapkin to return documents, although the evidence shows otherwise. When all else fails, let's pretend that the contract is ambiguous, in a desperate effort to keep the charade going a little longer. It is time to stop pretending. The Company has no excuse for its failure to pay Drapkin over $18 million. Summary judgment should be granted.

## ARGUMENT

**I.    The Company Agreed to Continue to Provide Drapkin with Medical Coverage**

The Company effectively acknowledges that it has no claim against Drapkin under Section 3(b) of the Separation Agreement. Ignoring that section's terms, the Company relies upon a hodgepodge of extrinsic evidence to assert a purported "clear understanding that Drapkin would obtain basic healthcare coverage from his new employer." Opp. 37.[1]

Directly to the contrary, Section 3(b) is straightforward and unambiguous:

---

[1] Capitalized terms have the meaning assigned to them in Drapkin's initial Memorandum of Law in support of this motion, dated June 30, 2010. That Memorandum is referred to as the "Drapkin Memorandum" or "Drapkin Mem." The Company's Memorandum of Law in opposition, dated August 2, 2010, is referred to as the "Opposition Memorandum" or "Opp." Drapkin's Statement of Material Facts in Support of his Motion for Summary Judgment Pursuant to Local Civil Rule 56.1 is referred to as "R. 56.1 St." The Company's response to the Rule 56.1 Statement is referred as "R. 56.1 Resp." The Company's Statement of Material Facts in Opposition to Donald Drapkin's Motion for Summary Judgment Pursuant to Local Civil Rule 56.1 is referred to as "Cmpy. R. 56.1 St." Drapkin's Rule 56.1 Counterstatement to the Company's R. 56.1 St. is referred to as "Drapkin R. 56.1 Cntr."

> Until you reach the age of 65, the Company will reimburse you for any medical expenses (defined as those expenses covered by the executive medical reimbursement program then in effect for the Company, from time to time) incurred by you and your immediate family which are not otherwise reimbursed through medical plans, if any, covering you or your immediate family.

R. 56.1 St. ¶ 48. Moreover, the only authority the Company cites in support of its assertion reiterates the uncontested point that "[i]n New York, if a contract is straightforward and unambiguous, its interpretation presents a question of law for the court to be made without resort to extrinsic evidence." *LaSalle Bank Nat'l Ass'n v. Nomura Capital Corp.*, 424 F.3d 195, 205 (2d Cir. 2005) (internal quotations omitted); *see also* Drapkin Mem.10-11. Section 3(b) is such an unambiguous provision.

The extrinsic evidence does not, in any event, support any joint understanding contrary to the clear language of Section 3(b). When the Company reinstated Drapkin's medical coverage, it knew that he could have purchased basic medical coverage through Lazard. R. 56.1 St. ¶ 59. Then, and later, Drapkin plainly contested the Company's assertion of improper usage and referenced the clear terms of Section 3(b). *Id.* ¶ 61. Drapkin acted at all times in compliance with Section 3(b) and the Company has no evidence to the contrary.

## II. Drapkin Did Not Retain Documents in Violation of the Separation Agreement

### A. The Company Never Requested that Drapkin Return Documents

Drapkin is entitled to summary judgment dismissing claims and defenses based on alleged violation of Section 6(a) of the Separation Agreement. As discussed in the Drapkin Memorandum, Section 6(a) required Drapkin to return documents only after a request by the Company for their return. There is no evidence that the Company made any such request. *See* Drapkin Mem. 14-15. The Company attempts, with no success, to manufacture a genuine issue of material fact by pointing to Steven Fasman's claim to have asked Drapkin if he "had anything he wanted to turn over." *See* Opp. 29-30. Fasman admitted he did not actually ask Drapkin to

turn anything over, does not claim to have made reference to anything specific or to the requirements of Section 6(a), and did nothing then or later to memorialize his supposed request. Drapkin Mem. 14-15. Drapkin denies that this conversation ever took place. But, assuming it did for purposes of this motion, Fasman's vague question did not trigger Drapkin's obligations under Section 6(a).[2]

Even if the evidence permitted a finding that the Company requested the return of documents, which it does not, Section 6(a) has no application to files located on the Link laptop. As explained in the Drapkin Memorandum, Section 6(h) of the Separation Agreement specifically references electronic files in Link's possession, but Section 6(a) contains no such reference. *See* Drapkin Mem. 15. The Company's sole rationale for pulling the Link laptop into the reach of Section 6(a) is its claim that its exclusion would render the provision meaningless. *See* Opp. 27. That argument is meritless, as is the similar argument which the Company makes with respect to Section 6(h). The final sentence of Section 6(a) requires Drapkin to return, if requested, "memoranda, notes, records, reports, manuals, drawings, blueprints, and other documents[,]" *and* electronic copies of such materials. Accordingly, excluding files stored on the Link laptop does not read Section 6(a) out of the contract, as the Company asserts. Rather, that section would have applied, had any request been made, to a laundry list of materials. Moreover, contrary to the Company's assertions, Sections 6(a) and 6(h) are clear as written. The former applies to any written or electronic materials Drapkin had relating to the Company and requires him to return them upon request. The latter requires that copies of electronic files that

---

[2] The Company attempts to bolster its claim that Fasman actually made a request under Section 6(a) by arguing that Drapkin deleted items from his computers as a result of this conversation. *See* Opp. 31. This argument makes no sense; if Fasman asked Drapkin to return documents, deleting them would be inconsistent. Moreover, Drapkin testified that he deleted materials related to the Company and kept information of a personal nature, as anyone leaving a job would naturally do. Drapkin Mem. 6. There is no evidence to the contrary.

were "otherwise unavailable" to the Company be turned over and then deleted, including from specific equipment including the Link laptop. These are not Drapkin's "interpretation" of the contractual provisions; they are what the plain language of the Separation Agreement says.

**B.    There Is No Basis for an Adverse Inference**

The Company also asserts that the presence of certain files on the Link laptop demonstrates that Drapkin breached Section 6(h) of the Separation Agreement. But it lacks evidence to support that claim, and therefore resorts to arguing that it is entitled to an adverse inference based on Link's disposal of her non-working backup device.

The Company claims that an adverse inference should be drawn from Link's having discarded her computer backup device, and that this inference precludes summary judgment. Opp. 34-37. To be sure, in "borderline cases, an inference of spoliation, *in combination with some (not insubstantial) evidence*," can defeat summary judgment. *See Liburd v. Bronx Lebanon Hosp. Ctr.*, No. 07 Civ. 11316, 2009 WL 900739, at *7 (S.D.N.Y. Apr. 3, 2009) (internal citation and quotation omitted; emphasis added). Here, however, the Company has *no evidence* that documents were improperly retained in violation of Section 6(h). To the contrary, the clear language of the Separation Agreement itself puts that claim to rest. *See* Drapkin Mem. 16-22.

To gain an adverse inference, the Company must show that (i) Drapkin had an obligation to preserve the backup device at the time it was discarded; (ii) he had a "culpable state of mind" when it was destroyed; and (iii) the backup device contained evidence relevant to the Company's claims "such that a reasonable trier of fact could find that it would support that claim or defense." *Gutierrez-Bonilla v. Target Corp.,* No. 08 Civ. 3985, 2009 WL 5062116, at *3 (E.D.N.Y. Dec. 16, 2009). In assessing whether to draw an inference from alleged spoliation, courts also consider whether any prejudice resulted from the alleged spoliation. *See, e.g.*, *Luna v. American Airlines*, 676 F. Supp. 2d 192, 202 (S.D.N.Y. 2009). The Company's spoliation

claim fails because Drapkin had no obligation to preserve the backup device, nor did he have a culpable state of mind with respect to its disposal, and the Company was not prejudiced.

### 1. Drapkin Had No Obligation to Preserve the Backup Device

The Company summarily asserts – without proof or detailed discussion – that Drapkin had an obligation to preserve Link's computer backup device. *See* Opp. 35. Drapkin had no such obligation, however, because he did not know the device existed, had no reason to believe it had any relevance to the Company's claims, and did not control the device. The Company broadly asserts that, because Drapkin was contemplating legal action on or before January 5, 2009, he was obliged to preserve the Link backup device. Opp. 35-36. However, "the obligation to preserve evidence arises *when the party has notice that the evidence is relevant to litigation or when a party should have known that evidence may be relevant to [a] future litigation.*" *Fujitsu Ltd. v. Federal Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001) (emphasis added). Until the Company answered his Complaint in this action, Drapkin was unaware of any dispute between him and the Company concerning any particular term of the Separation Agreement, with the possible exception that he and Fasman had disagreed concerning the scope of the Separation Agreement's provision relating to Drapkin's health insurance. R. 56.1 St. ¶ 249. Only in April 2009, did the Company first notify Drapkin that it asserted he had improperly retained documents. *Id.* Because that is *after* Link had disposed of the backup device, Drapkin had no obligation to preserve the device when Link discarded it. *See, e.g., Kraus v. General Motors Corp.*, No. 03 Civ. 4467, 2007 WL 3146911, at *2 (S.D.N.Y. Oct. 24, 2007) (without notice of claim, defendant had no obligation to preserve evidence related to that claim).[3]

---

[3] *See also Bobo v. Wachovia Secs., LLC*, No. 107 Civ. 010506, 2010 WL 1186455, at *7 (N.D.N.Y. Mar. 23, 2010) (finding duty to preserve did not arise because, *inter alia*, plaintiff never expressed any intention of bringing claim or alleging discrimination); *Rivera v. Nat'l*

The Company has no evidence that Link discarded the backup device after Mafco served its Answer in April 2009.  The last recorded connection of *any* backup device to the Link laptop is January 24, 2009, which was also the last day on which the backup program was run.  Drapkin R. 56.1 Cntr. ¶ 250.  There is also no evidence to controvert Link's testimony that she discarded the backup device when it stopped working.  *See* R. 56.1 Resp. ¶¶ 105 & 107.  No evidence shows that Link tried to use the backup device after her last unsuccessful attempt, nor explains why Link would not have tried to use it after January 24, 2009, had it still been working.  Thus, the only supported, logical inference to be drawn is that the backup device stopped working and Link discarded it around January 24, 2009.  This was nearly three months before Mafco filed its Answer.  Because there is no evidence that Link discarded the backup device after Drapkin could possibly have incurred an obligation to preserve it, the Company's spoliation argument fails. *See, e.g., Smith v. City of New York*, 388 F. Supp. 2d 179, 189 (S.D.N.Y. 2005) (denying sanctions where plaintiff had put forth no evidence that defendants had destroyed notes after being put on notice of plaintiff's claim).

Even if that did not dispose of the issue, Drapkin could not have had an obligation to preserve the backup device because he did not know that it existed.  If Drapkin had no knowledge of the backup device, "*ipso facto* [it] can hardly have been within [Drapkin's] custody or control."  *In re Grand Jury Subpoena Duces Tecum Dated May 29, 1987*, 834 F.2d 1128, 1134 (2d Cir. 1987).  *See, e.g.*, *Alfieri v. Guild Times Pension Plan*, 446 F. Supp. 2d 99, 112 (E.D.N.Y. 2006) (no duty to preserve when the evidence was in the custody and control of a separate entity).  Both Drapkin and Link testified that she never told him about the backup device, and that he did not know she had discarded it, until after the Company made an issue of it

---

*Passenger R.R. Serv.*, 442 F. Supp. 2d 164, 170 (S.D.N.Y. 2006) (no duty to preserve where, *inter alia*, plaintiff never told defendant of her claim).

in this litigation. R. 56.1 St. ¶¶ 105-107. To rebut this testimony, the Company points to *no evidence*. Instead, the Company simply "disputes this information and asserts that there is no evidence corroborating Link's present version of this events." *Id.* ¶ 107. The Company cites no case law requiring corroboration and it certainly cannot preclude summary judgment merely by questioning Drapkin and Link's credibility. *See Crawford-El v. Britton*, 523 U.S. 574, 600 (2000) (holding that "a properly supported motion" for summary judgment cannot be defeated by "general attacks upon the [movant's] credibility").

### 2. The Company Was Not Prejudiced By the Loss of the Backup Device

The Company's spoliation claim separately fails because it has shown no prejudice resulting from Link's disposal of the backup device. Among the factors relevant to a claim of spoliation is "the degree of prejudice engendered by the spoliation, which depends on whether other evidence addressing the same question is available to the parties." *Luna*, 676 F. Supp. 2d at 202. The Company's claimed prejudice is belied by the fact that it had access to the Link laptop, which the record shows contained essentially the same materials as would have been on the backup device.

The Company conducted an unfettered examination of the Link laptop; according to the Company itself, this was "[o]ne way to establish the amount and kind of documents on [the backup device], which was apparently routinely connected to the existing computer[.]" Cmpy. R. 56.1 St. Ex. 69 at 2. The Company is correct – its examination of the Link laptop provided it with everything it needed to know about the relevant files that could have been on the backup device. The backup program that Link used copied files from her laptop to the backup device, and Link used the backup device for no other purpose. Drapkin R. 56.1 Cntr. ¶ 240. Thus, the backup device could only have contained files that had existed on the Link laptop. The Company offers no evidence to suggest that the contents of the backup device and the laptop

diverged in a meaningful way through the date when a forensic copy of the laptop was made.[4]

In short, the available evidence demonstrates that the Link laptop and the backup device contained the same documents and e-mail messages. The Company's expert analyzed the Link laptop; thus, it cannot claim prejudice from Link's discarding of the backup device and its spoliation claim must fail. *See, e.g., Luna*, 676 F. Supp. 2d at 202 (noting that spoliation sanctions were not warranted because, *inter alia*, the non-spoliating party had access to essentially equivalent evidence); *Port Auth. Police Asian Jade Soc. v. Port Auth.*, 601 F. Supp. 2d 566, 571 (S.D.N.Y. 2009) (same); *Houlihan v. Marriott Int'l, Inc.*, No. 00 Civ. 7439, 2003 WL 22271206, at *2 (S.D.N.Y. Sept. 30, 2003) (same). Thus, there is no adverse inference standing in the way of summary judgment.

### C.    The Documents Were "Otherwise Available" to the Company

As with its other claims, the Company's claim that Drapkin breached Section 6(h) ignores both the language of the contract and the need for evidence. Contrary to the Company's position, the Separation Agreement expressly required Drapkin to delete *only* those electronic documents in his possession or on Link's laptop that were not "otherwise available" to the Company. Section 6(h) provides:

> you may continue to possess the equipment identified in Section I of Annex C . . . provided that you promptly provide to the Company copies of all electronic files in your (or your personal assistant's) personal possession relating to the Company or its affiliates *and not otherwise available to the Company*, after which you delete (and do not attempt to recover) all copies of *such files* in your possession.

R. 56.1 St. ¶ 81 (emphasis added). There is no ambiguity in this language. The phrase "not

---

[4] From September 7, 2008 through January 24, 2009, the evidence indicates that the only files deleted from the Link laptop were 292 system-generated files, not user-created documents or e-mails. Drapkin R. 56.1 Cntr. ¶ 240. Thus, as of January 24, 2009, with respect to the types of files about which the Company complains, the contents of the Link laptop and the backup device were essentially identical. The Company chose not to search for any deletions after January 24, 2009, so there is no evidence of any such deletions. *Id.*

otherwise available" clearly limits the electronic files Drapkin was obligated to return to the Company. The files Drapkin was obligated to delete were the same files he was obligated to return – those "not otherwise available to the Company." Because the Company has made no evidentiary showing that the electronic documents found on the Link laptop were not "otherwise available" to it – beyond a tardy, self-serving, and wholly irrelevant declaration from its in-house counsel – summary judgment is appropriate.

The Company ignores the contract's plain language, referring instead to a hierarchy of "purposes" the Company ascribes to Section 6(h). Opp. 33. The Company cites no legal or factual support for these alleged "purposes," nor any evidence Drapkin ever shared these "purposes." *Id.* But to defeat summary judgment, the Company must show that these asserted "purposes" were the subject of a meeting of the minds of the parties, not mere speculation or the Company's unstated subjective intent.[5] Thus, Drapkin's obligations under section 6(h) are triggered only if the electronic files were not "otherwise available" to the Company.

As Drapkin has pointed out, the Company has no evidence that these documents were not otherwise available to it, given its failure to conduct any meaningful search. *See* Drapkin Mem. 17-20. Apparently recognizing that this is fatal to its Section 6(h) claim, the Company now claims to have "conducted additional supplemental searches" and that "certain documents were not available." R. 56.1 Resp. ¶ 135. Thus, *after* discovery had closed, and *after* Drapkin had filed a summary judgment motion, the Company claims it searched its files and determined that, as of August, 2010, "certain" files were not available to it. This search is untimely and

---

[5] Moreover, although the Company claims that the scope of Drapkin's deletion obligation is ambiguous, "it is generally accepted that ambiguous contract terms are construed against the drafter." *Kerin v. United States Postal Serv.*, 116 F.3d 988, 992 (2d Cir. 1997). The Company drafted the Separation Agreement, and Fasman specifically drafted section 6(h). Drapkin R. 56.1 Cntr. ¶ 170. In any event, the Company proposes not to clarify the contractual language but to contradict it entirely, which it may not do.

irrelevant. Whether some set of documents now are unavailable to the Company, more than three years after Drapkin left the Company, is not the relevant inquiry. The vast majority of the documents at issue are e-mails (or their attachments), which resided on the Company's servers until at least May 12, 2008. Drapkin Mem. 19. Drapkin is not responsible for the Company's decision to delete those files.[6]

Finally, the Company claims that materiality of a breach is a question of fact that precludes summary judgment in favor of Drapkin. Even if that were correct, which it is not (*see* Drapkin Mem. 22), the Company must still set forth some evidence to show that there is a factual *issue* as to the materiality of a breach. *See International Gateway Exch. LLC v. Western Union Fin. Servs.*, 333 F. Supp. 2d 131, 143 (S.D.N.Y. 2004) (granting summary judgment in breach of contract case where non-movant offered insufficient evidence of materiality of breach)**.** The Company does not even attempt to create such a factual issue. Contrary to the Company's belated and unsupported statements, there is no claim – and certainly no evidence – that Drapkin ever tried to use or disclose any of these files. If the Company wanted Drapkin to return them, it should have asked, rather than ceasing to pay Drapkin what it owed.

## III. Drapkin Did Not Breach Section 5 of the Separation Agreement

The Company previously stated that its *only* contention regarding any alleged disparagement in breach of Section 5 of the Separation Agreement was Drapkin's conversation with Eric Rose at Quality Meats. Drapkin R. 56.1 Cntr. ¶ 186. Apparently aware of the

---

[6] Further substituting speculation for fact, the Company claims that Drapkin attempted to "recover" the e-mails because they were created on the Link laptop on July 8, 2007. Opp. 35. This argument fails for at least two reasons. First, Section 6(h) specifically only prohibits Drapkin from attempting to recover *the files that are subject to his deletion obligation*. That obligation applied only to documents not "otherwise available" to the Company, but all of the e-mail at issue would have been available to the Company. Second, there is no evidence that Drapkin ever knew about these documents, used the Link laptop, or accessed the documents for any purpose. R. 56.1 St. ¶¶ 106-107, 133-134, 139-141.

insufficiency of that claim, the Company now, for the first time, hypothesizes additional incidents of alleged disparagement, midway through summary judgment briefing. Under the language of the Separation Agreement, none of these new claims of disparagement precludes summary judgment in favor of Drapkin. As set forth in the Drapkin Memorandum, the express terms of Section 5 required the Company to provide notice of any alleged breach and an opportunity to cure. Moreover, Drapkin could only breach Section 5 by making disparaging statements which entered or were reasonably likely to enter the public domain. *See* Drapkin Mem. 26-28. In addition, these untimely allegations either do not constitute disparagement, lack any meaningful evidentiary support, or both.

### A. The Company Cannot Read the Notice and Cure Provision Out of Section 5

The Company concedes that it never gave Drapkin notice of or an opportunity to cure *any* alleged incident of disparagement. Rather, the Company asserts that "if Drapkin has disparaged the Company or Related persons, such breach is not curable as the damage to the reputation of the Company and its Related Person is done." Opp. 25. The Company offers no reasons why these particular alleged disparagements are incurable, but instead argues generally that disparagement is incurable. If so, Section 5's requirement of notice and an opportunity to cure would be read out of the agreement entirely, contrary to well-established principles of contract interpretation. *Legal Aid Soc'y v. City of New York*, 114 F. Supp. 2d 204, 229 (S.D.N.Y. 2000) ("basic principles of contract interpretation militate against the adoption of an interpretation that would render any portion of the contract language a nullity"). The Company's position seeks to create a futility exception that would swallow the notice and cure provision whole. But, "[t]he [futility] exception to the general rule favoring enforcement of notice and cure provisions is a narrow one." *Point Prod. A.G. v. Sony Music Entm't, Inc.*, No. 93 Civ. 4001, 2000 WL 1006236, at *4 (S.D.N.Y. July 20, 2000). Futility is found "only in limited circumstances,"

which include "where the non-performing party (1) expressly repudiated the parties' contract or (2) abandons performance thereunder." *Id.* (internal quotation and citation omitted). Neither of these circumstances applies. Instead, the Company unilaterally asserts that it has been incurably disparaged. Such a one-sided claim that a cure is "impossible" cannot release the Company from its contractual obligation to provide an opportunity to cure. *See id.* at *4 (one party's perception that other party could not cure did not render cure futile).[7]

## B. The Company's Construction of the Term "Public Domain" Must Be Rejected

The Company's position that the alleged disparagement entered the "public domain" is wholly untenable. Without citation to any competent evidence, the Company claims that "the *parties* understood the term [public domain] to encompass –the community in which MacAndrews & Forbes travels,'including –the deal makers, the businesspeople, the lawyers, [and] the financiers.'" Opp. 25 (emphasis added). In asserting that this was the parties' *mutual* understanding, the Company relies on nothing in the contract itself, nor does it cite the testimony of anyone involved in negotiating Section 5. Instead, the Company cites testimony that it is the Company's *contention* – *not* the parties' *intention* – that the language should be construed this way. *Id.* (citing deposition testimony from Steven Fasman, the Company's 30(b)(6) witness). Barry Schwartz, who actually negotiated the Separation Agreement, could not recall *any* conversations he had with Drapkin concerning the "public domain" requirement, nor *any*

---

[7] Moreover, the Company is just plain wrong. There is no reason Drapkin could not cure any alleged reputational harm to the Company by, for example, recanting his alleged statements that M&F was uninterested in life sciences or that Perelman's investment vehicle's public filing contained "ridiculous" language. Indeed, the Company suffered no reputational harm as a result of the Quality Meats conversation. Rose testified that he was "frightened" at first by Drapkin's alleged comments, but concluded that Drapkin was wrong. Drapkin R. 56.1 Cntr. ¶ 183. He further testified that hearing Drapkin call Perelman a "putz" "made [him] think more positively about Ronald." *Id*. ¶ 189.

understanding of what that term was intended to mean. Drapkin R. 56.1 Cntr. ¶ 185. Since the

Company has put forth no evidence that its newly asserted understanding or intent was ever

conveyed to, let alone accepted by, Drapkin, the Company's asserted meaning is irrelevant. *Klos*

*v. Lotnicze*, 133 F.3d 164, 168 (2d Cir. 1997) ("The secret or subjective intent of the parties is

irrelevant.").

      The term "public domain" should be given the meaning that it is generally understood to

have, not the meaning the Company conjures up to escape its contractual obligations to Drapkin.[8]

The Company never ties its convoluted interpretation of the phrase "public domain" to any

commonly accepted understanding, and never explains why the parties used the term "public

domain" if they intended something different and more specific, such as the "investment

community." This is all the more strange and unexplainable when the Company proposes a

construction that would treat as "public" statements made privately to a close friend over dinner

or in a single internal e-mail to a co-worker. *See Shaw Group Inc. v. Triplefine Int'l Corp.*, 322

F.3d 115, 124 (2d Cir. 2003) (the court is "not free to alter the plain terms of an agreement or to

strain language beyond its reasonable and ordinary meaning").[9] Moreover, contrary to the

Company's contention, its imaginative and unorthodox interpretation of the otherwise

unambiguous phrase "public domain" does not render the contract ambiguous so as to defeat

summary judgment. *See Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir.

---

[8] As explained in the Drapkin Memorandum, the term "public domain" is understood to refer to
"the general public." Drapkin Mem. 27. The Company dismisses the cases Drapkin cited in
support of this interpretation of the term because they did not involve disparagement, but offers
*no* cases proposing any other construction of the term.

[9] In a familiar refrain, the Company claims that accepting the ordinary meaning of "public
domain" would render the Separation Agreement's non-disparagement provision a nullity. Opp.
25. To the contrary, a provision limiting Drapkin's communications with the general public bars
him from, for example, giving a scathing interview about the Company to the Wall Street Journal
or other publications, and prevents him from making disparaging statements about Perelman to
journalists, gossip columnists, biographers and the like, or in any public forum.

1992) ("The language of a contract is not made ambiguous simply because the parties urge different interpretations.").

### C. The Company's New Claimed Incidents Are Not Disparagement

Finally, the Company's additional examples of "disparagement" do not preclude summary judgment because they are either not disparagement or are purely speculative. First, the Company contends that Rose, in his declaration, identified instances in which Drapkin denigrated Perelman and the Company in the presence of others. Opp. 8. However, at deposition, Rose was unable to recall a single specific instance of any statement. Drapkin R. 56.1 Cntr. ¶ 187. Such vague allegations are insufficient to preclude summary judgment. *Cf. Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985) (plaintiff's statement that she "heard disparaging remarks about Jews, but, of course, don't ask me to pinpoint people, times or places" insufficient to preclude summary judgment in Title VII action); *Prowley v. Hemar Ins. Corp. of Am.*, No. 05 Civ. 981, 2010 WL 1848222, at *6 (S.D.N.Y. May 7, 2010) ("Mere conclusory statements that the claimant was disparaged by false statements are insufficient to state a defamation claim.").

The Company also claims that Drapkin *must have* disparaged the Company or Perelman to Lazard because (i) Lazard supposedly used to do business with the Company but stopped after Drapkin went to work there and (ii) Drapkin said to Perelman that the Company was not on Lazard's "radar screen." Opp. 9. The Company asks this Court to take not one, but two unwarranted and speculative leaps. First, it asks the Court to accept that Drapkin must have said something negative about the Company or Perelman to Lazard's management. *See, e.g., Schulman v. Continental Ins.*, 258 A.D. 2d 639, 640; 685 N.Y.S.2d 794, 796 (2d Dep't 1999) ("The plaintiff's contention that the defendants must have made disparaging remarks because she was not hired by other companies is speculative."). Second, the Company invites the Court to

14

conclude, without any evidence, that Drapkin had the power to cause Lazard to cut off ties with the Company, and that any lost business was not attributable to other causes. *See, e.g.*, *Mapinfo Corp. v. Spatial Re-Engineering Consultants*, No. 02 Civ. 1008, 2006 WL 2811816, at *5 (N.D.N.Y. Sept. 28, 2006) ("[M]ere speculation as to why certain customers gave SRC the 'cold shoulder,' without any further proof, is insufficient to demonstrate that the named customers were affected by the alleged disparagement."). The Company must produce *evidence* of disparagement, not rank speculation.[10]

Finally, the Company states that in response to an internal e-mail from Robert Berger, another Lazard employee, Drapkin characterized certain language in a public filing by an entity related to Perelman as "ridiculous." Opp. 8. The Company truncates Drapkin's comment for effect; what he actually wrote was "please get me a copy ridiculous says he will put in what he feels like wow." Drapkin R. 56.1 Cntr. ¶ 189. Despite the Company's apparently thin skin, Drapkin does not appear to have said anything – much less anything disparaging – about the Company or about Perelman personally. Rather, he asked to see a copy of the complete filing and appears to have questioned whether the filing could have been drafted in the way Berger described. Notably the Company never asked Drapkin about this e-mail, nor did it seek to depose Berger. Nonetheless, the Company would have the Court interpret Section 5 to bar Drapkin from stating his opinion *internally* at Lazard about matters relevant to his and its business, if they involved Perelman. Such a commercially unreasonable construction of the terms "public domain" and "disparagement" should be rejected out-of-hand. *See In re Lipper Holdings, LLC*, 1 A.D. 3d 170, 171, 766 N.Y.S.2d 561, 562 (1st Dep't 2003) ("A contract should

---

[10] The evidence regarding Drapkin's statement that the Company was not on Lazard's radar screen indicates that Drapkin was *not* disparaging the Company; he was trying to be helpful. Drapkin R. 56.1 Cntr. ¶ 190.

not be interpreted to produce a result that is absurd, commercially unreasonable or contrary to the reasonable expectations of the parties.").

## IV.    Drapkin Did Not Attempt to Induce Rose to Leave the Company

As noted in the Drapkin Memorandum, the Company's disparagement claim was never stated in its pleadings.  Drapkin Mem. 24.  Not satisfied with having injected one unpled claim into the case, the Company now also contends that Drapkin's conversation with Rose violated section 6(c) of the Separation Agreement.  Drapkin R. 56.1 Cntr. ¶ 203.  This claim fails for several reasons:  (i) the Company never pled this claim until summary judgment briefing was well underway; (ii) based on its conduct after learning of the alleged facts, the Company is estopped from claiming a breach of Section 6(c); and (iii) Drapkin's comments to Rose did not constitute an "attempt to influence."

The Company first amended its pleadings to assert a breach of Section 6(c) only *after* Drapkin moved for summary judgment.  Opp. 22.  Despite this, the Company defensively claims that Section 6(c) is properly at issue in this litigation.  It is not.  The belated timing of the Company's amended pleading is effectively the same as if it had sought to assert a new claim or defense in its opposition to Drapkin's motion.[11]  The case law is clear:  "because a party cannot amend its pleading through its opposition brief, this Court should not even consider [the Company's] claim."  *Maxim Group LLC v. Life Partners Holdings, Inc.*, 690 F. Supp. 2d 293, 308 (S.D.N.Y. 2010) (collecting cases).  Incredibly, the Company takes Drapkin to task for not addressing its unpled Section 6(c) claim in his summary judgment papers, but never once explains why it could not have amended its pleadings to assert it, despite having known the

---

[11] The Company claims it satisfied its obligation because, on July 27, 2010, nearly a month after Drapkin served his summary judgment motion, it filed an amended pleading alleging that Drapkin breached Section 6(c).  Opp. 22.  The Company had ample opportunity to amend before summary judgment briefing.  The Court should not tolerate such gamesmanship.

relevant facts since well before the inception of this litigation. Opp. 22-23.

The Company attempts to excuse its delay by relying upon the Court's Order permitting the Company to take discovery on its disparagement claim. *Id.* 22. That Order – which issued during discovery, on January 18, 2010 – merely concluded that, at that time, the Company's general allegation of breach of contract was sufficient to permit it take discovery on the subject of disparagement. Drapkin R. 56.1 Cntr. ¶ 195. The Court did not relieve the Company of its obligation to actually plead its claims and defenses in a timely fashion. The cases cited by the Company are similarly inapposite. Those cases (*see* Opp. 21) stand for the straightforward proposition that preclusion of evidence is not warranted where the opposing party is on notice of that evidence. They do not excuse a party from pleading its claims and defenses. Finally, the Company claims that because the Federal Rules of Civil Procedure have a liberal policy in favor of allowing amendment, its belated allegation concerning breach of Section 6(c) is properly at issue in this case. Notwithstanding that policy, the rules are not so generous as to countenance amending after a motion for summary judgment has been served. *See Wechsler v. Hunt Health Sys.*, 186 F. Supp. 2d 402, 415 (S.D.N.Y. 2002) (party cannot amend answer to raise new defenses without court's permission). *Cf. Maharishi Hardy Blechman Ltd. v. Abercrombie & Fitch Co.*, 292 F. Supp. 2d 535, 544 (S.D.N.Y. 2003) ("A summary judgment opposition brief is not a substitute for a timely motion to amend the complaint.").

The Company's Section 6(c) claim also fails, as a matter of law, because the Company's own conduct demonstrates that it did not regard Drapkin's alleged statements to Rose as a breach of Section 6(c). Fasman, the Company's 30(b)(6) witness, testified that Rose reported the Quality Meats conversation to the Company's senior management within days after it occurred in May of 2007. R. 56.1 St. ¶ 158. Despite such knowledge, the Company thereafter made two

payments to Drapkin, totaling $4.5 million, as required under the Stock Purchase Agreement.  R. 56.1 St. ¶ 35.  This course of conduct clearly demonstrates that the Company did not understand Drapkin's conduct or statements during the Quality Meats conversation, as reported to the Company by Rose, to constitute an attempt to influence Rose to leave the Company, in violation of Section 6(c).  The Company's subsequent performance estops the Company from now claiming that the Quality Meats conversation constituted a breach of Section 6(c).  *See Federal Ins. Co. v. Americas Ins. Co.*, 258 A.D.2d 39, 44, 691 N.Y.S.2d 508, 512 (1st Dep't 1999) (parties' course of conduct determined intended meaning of contract language because there is "no more compelling evidence of intent" than the parties' actions).[12]  The Company fully understood, in 2007, that Drapkin's alleged venting to a close friend over dinner did not violate the Separation Agreement.  The Company's belated assertion now of a claim based upon an alleged breach of Section 6(c), like all of its claims, is nothing more than a post-hoc rationalization for the Company's failure to pay Drapkin what it owes.

And, of course, the Company's apparent understanding of the Quality Meats conversation in 2007 was completely correct.  Drapkin's alleged statements to Rose were not an attempt to influence Rose to terminate his employment.  Rose could not recall the words he claims Drapkin used, Drapkin R. 56.1 Cntr. ¶ 176, thus making it impossible to determine whether Drapkin said anything that could truly be construed an attempt to influence Rose to leave M&F.  But, even the substance of what Rose attributes to Drapkin does not fall within Section 6(c)'s reach.  Rose testified that Drapkin indicated that Rose's "staying *long term* at MacAndrews was not a good idea" because M&F was not interested in life sciences.  R. 56.1 St. ¶ 153 & Ex. 20 at 96:12-14

---

[12] *See also Evans v. Famous Music Corp.*, 1 N.Y.3d 452, 459, 775 N.Y.S. 2d 757, 761-63, 807 N.E.2d 869, 873 (2004) (ambiguity in contractual language resolved according to parties' course of performance); *Citibank, N.A. v. 666 Fifth Ave. Ltd. P'ship*, 2 A.D.3d 331, 332, 769 N.Y.S.2d 268, 269-70 (1st Dep't 2003) (same).

(emphasis added), 98:2-10.  Similarly, Rose claims (again without being able to recall specific words) that Drapkin suggested that his joining the Company would turn out to be "disastrous" for him as a "career opportunity[.]"  R. 56.1 St. ¶ 153.  There is no allegation that Drapkin suggested a better career opportunity, made any kind of offer to Rose, or even told Rose that he thought he should leave the Company.  At most, Rose claims that Drapkin questioned whether the Company was the best place for Rose to remain for the long-term, without urging Rose to go anywhere else.  Such a tenuous suggestion to a friend over dinner cannot truly be construed as an attempt to influence him to leave.

Indeed, the grand effect of that advice, taking Rose at his word, is that he felt frightened for a brief period of time, discussed that "fright" with no one but his wife, raised his "personal antennae," and subsequently concluded that Drapkin was wrong.  R. 56.1 St. ¶¶ 155-156, 159.  He does not claim to have done anything — such as contacting a headhunter or refreshing his resume — that would indicate that he was, in fact, influenced to seek another job.  *Id.*  Despite the almost non-existent impact of the alleged comments, the Company's own inaction in the face of them, and the fact that the Company failed to raise this purported breach in its pleadings, it claims that this advice justifies its withholding of $18 million.  The Court should reject this claim for the transparent attempt to avoid the Company's payment obligations that it is.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in the Drapkin Memorandum, Drapkin's motion for summary judgment should be granted and the Company's claim and defenses should be dismissed.

New York, New York
August 31, 2010

Respectfully Submitted,

MORVILLO, ABRAMOWITZ, GRAND,
IASON, ANELLO & BOHRER, P.C.

By: s/Thomas M. Keane
    Elkan Abramowitz
    Thomas M. Keane
    Sidhardha Karamaju
    Gretchan Ohlig
565 Fifth Avenue
New York, New York 10017
(212) 856-9600

HOGAN LOVELLS US LLP

By: s/David Dunn
    David Dunn
    Christine Wagner
875 Third Avenue
New York, New York 10022
(212) 918-3000

*Attorneys for Donald G. Drapkin*